

FILED IN CLERK'S OFFICE
U S D C Atlanta



MAR 2 9 2005

LUTHER D THOMAS, Clerk
By: _____ Deputy Clerk

# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF GEORGIA
### ATLANTA DIVISION

| | |
|---|---|
| Bill Martin, John Burks, Betty Boze, )<br>Essie Lee Kelly, Brian Holt, and )<br>Barbara Parham )<br> )<br>Plaintiffs, )<br> )<br>　　　　　Versus )<br> )<br> )<br>BioLab, Inc., Great Lakes Chemical )<br>Corporation, and Larry Bloom )<br> )<br>Defendants )| **CIVIL ACTION**<br>**FILE NO.**<br><br>**1:05-CV-0835 -HTW**<br><br><br>**JURY TRIAL REQUESTED** |



FORMS RECEIVED
Consent To US Mag ____
Pretrial Instructions ____
Title VII NFC ____

## CLASS ACTION COMPLAINT FOR DAMAGES
## AND FOR DECLARATORY JUDGMENT

NOW INTO COURT, through undersigned counsel, come Plaintiffs

Bill Martin, John Burks,  Betty Boze, Essie Lee Kelly, Brian Holt and

Barbara Parham who respectfully represent on their own behalf, and on

behalf of all others similarly situated as follows

### PARTIES

1.　　The following are the parties to this action.

**Plaintiffs:**

a )　　Plaintiff Bill Martin (hereinafter "Martin"), is an individual over

nineteen (19) years of age and a resident citizen of Newton County, Georgia
Martin conducts business in Conyers, Georgia under the name of Martin's
Auto Repair, which business suffered lost profits and other damages as a
result of the incident complained of herein;  Martin has also suffered damage
to personal property and personal injury, as set forth in more detail below;

b.)     Plaintiff, John Burks, (hereinafter "Burks"), is a person of the full age
and a resident citizen of Rockdale County, Georgia;

c.)     Plaintiff, Betty Boze, (hereinafter "Boze"), is a person of the full age
and a resident citizen of Walton County, Georgia,

d.)     Plaintiff, Essie Lee Kelly, (hereinafter "Kelly"), is a person of the full
age and a resident citizen of Rockdale County, Georgia;

e.)     Plaintiff, Brian Holt, (hereinafter "Holt"), is a person of the full age
and a resident citizen of Rockdale County, Georgia;

f.)     Plaintiff, Barbara Parham, (hereinafter "Parham"), is a person of the
full age and a resident citizen of Rockdale County, Georgia;

**Defendants:**

g.)     Defendant Bio-Lab, Inc , (hereinafter "Bio-Lab"), is a Delaware
corporation, licensed to do business in the State of Georgia, and conducting
business in several counties in the State of Georgia, including, *inter alia*
Gwinnett and Rockdale Counties, Bio-Lab is a wholly owned subsidiary of

defendant, Great Lakes Chemical Corporation, Bio-Lab may be served through its registered agent for service of process, John Peterson, 1735 North Brown Road, Lawrenceville, GA, 30043;

h.) Defendant Great Lakes Chemical Corporation, (hereinafter "Great Lakes"), is a Delaware corporation, with its principal place of business in Indianapolis, Indiana; Great Lakes may be served through its agent for service of process Karen Witte Duros, 9025 N. River Rd., Ste. 400, Indianapolis, IN, 46204;

i.) Defendant Larry Bloom (hereinafter "Bloom") is a person of the full age and a resident citizen of Fulton County, Georgia. Bloom may be served at his domicile at 525 Coldstream Ct. NW, Atlanta, GA, 30328

## JURISDICTION OF THE COURT

2. Jurisdiction of this action is based upon 28 U.S.C. § 1332(d) (2), as amended by the "Class Action Fairness Act of 2005" The matter in controversy exceeds the sum of S5,000,000, exclusive of interest and costs All named Plaintiffs and more than two-thirds of the members of the class are citizens of the State of Georgia. A primary defendant, Great Lakes, is not a citizen of the State of Georgia. During the three-year period preceding the filing of this class action, five class actions have been filed arising out of the same incident, asserting the same or similar factual allegations against

one or more of the Defendants herein on behalf of a class of plaintiffs defined similarly to the one described herein

## ALLEGATIONS FOR CLASS CERTIFICATION

**3.**     Plaintiffs bring this action on their own behalf and on behalf of all persons, corporations, firms or entities similarly situated. This action should be certified as a class action pursuant to F R C P Rule 23, for the following reasons:

**4.**     The class is so numerous that joinder of all members is impracticable. Thousands of people were adversely affected by the explosion and fire at Bio-Lab's facility in Conyers, Georgia on and after May 25, 2004   They suffered damages in the past and/or into the foreseeable future, including personal injuries, emotional distress, fear and fright, evacuation and inconvenience, property damage, special damages for past and future loss of income, special damages for business interruption, special damages for out-of-pocket expenses, special damages for past and future cost of medical care and diagnostics, including medical monitoring in the future for latent diseases. A mass joinder of that many plaintiffs would be impracticable to manage by the Court and by counsel

**5.**     In accordance with Local Rule 23.1(A)(2)(d), the following issues of fact and law are common among members of the class

**Common Issues of Fact:**

a) the cause and origin of The Fire at Defendants' warehouse,

b) whether there were violations of relevant fire codes, statutes, rules and regulations;

c) whether Defendants failed to supervise, train and otherwise manage employees handling dangerous chemicals,

d) whether Defendants inadequatly and/or improperly stored dangerous chemicals,

e) whether Defendants failed to inspect dangerous chemicals;

f) whether Defendants failed to implement safe chemical handling procedures,

g) whether Defendants failed to promptly notify emergency personnel regarding an incident and to mitigate, evacuate, warn and otherwise preventing The Fire at issue from becoming a catastrophic event;

h) whether the procedures employed by Defendants to administer, accept and settle claims related to The Fire were negligent and/or fraudulent,

i) whether Defendants' breach of duty was willful and/or wanton and/or in bad faith,

j) the general causation of damages suffered by plaintiff class;

k) the necessity for, and extent of, an evacuation of the surrounding community,

l) the general health effects of exposure to the toxic chemicals released in The Fire,

m) the necessity for and extent of medical monitoring for the class,

n) quantum of punitive damages owed by Defendants to the class,

o) quantum of Plaintiffs' attorneys fees owed by Defendants to the Class.

## Common Issues of Law:

a) what are Defendants' legal duties with regard to preventing and/or mitigating The Fire;

b) what is the legal standard for determining Defendants' negligence,

c) what is the legal standard for determining whether defendants are strictly liable,

d) what is the legal standard for determining whether defendants are liable for nuisance,

e) what is the legal standard for determining whether Defendants are liable for trespass,

f) what is the legal standard for determining whether Defendants are

liable for attorneys fees,

g) what is the legal standard for the imposition of punitive damages in this case;

h) what is the legal standard for proper claims settlement procedures,

i) whether the Defendants may be required to pay for the future cost of medical care, diagnostics and/or medical monitoring,

j) any other issues of law implicit in the foregoing common issues of fact.

**6.**     The claims of the representative parties are typical of the claims of the Class   The representative parties herein collectively have suffered at least one of each category of damages suffered by the Class as a whole, namely, damages in the past and/or into the foreseeable future,  including personal injuries, emotional distress, fear and fright. evacuation and inconvenience, property damage, special damages for past and future loss of income, special damages for business interruption, special damages for out-of-pocket expenses, special damages for past and future cost of medical care and diagnostics, including medical monitoring in the future for latent diseases

**7.**     The representative plaintiffs will fairly and adequately protect the interests of the Class. None of them have any relationship with the

Defendants in this case. Undersigned counsel for the representative plaintiffs will vigorously prosecute this action on behalf of the entire Class Undersigned counsel are knowledgeable and experienced in the substantive and procedural issues raised by class litigation following mass disasters, they will protect the interests of the entire Class, and they are willing to commit the financial resources to prosecute this action on behalf of the entire Class

8.     The Class may be defined objectively in terms of ascertainable criteria, such that the court may determine the constituency of the Class for purposes of the conclusiveness of any judgment that may be rendered in the case.   This action resulted from a single incident, the harmful effects of which may be objectively defined and identified by the court  Until the time that a more precise geographic location can be identified, the Class of persons sought to be represented herein consists of all persons, corporations, firms or entities who suffered damages as a result of The Fire at the Bio-Lab warehouse in Conyers, Georgia on and after May 25, 2004, who or which were located within the town of Conyers, Georgia, and thence in a general northeast direction an approximate distance of 45 miles from the site of The Fire.

9.     The prosecution of separate actions by individual members of the class would be impracticable and would create a risk of inconsistent or

varying adjudications with respect to individual members of the Class, and which would establish incompatible standards of conduct for the Defendants herein

**10.** Adjudications with respect to individual members of the Class would, as a practical matter, be dispositive of the interests of the other members not parties to the adjudications or will substantially impair or impede their ability to protect their interests, especially as it concerns the common issues identified in paragraph 5, above.

**11.** The questions of law or fact common to the members of the Class predominate over any questions affecting only individual members, and a class action is superior to other available methods for the fair and efficient adjudication of the controversy For those plaintiffs with relatively small claims, it would be extremely difficult to prosecute their claims on their own The enormous cost of proving the common issues of Defendants' liability for compensatory and punitive damages, quantum of punitive damages and general causation would be prohibitive for the individual claimant

## **ALLEGATIONS OF FACT COMMON TO ALL COUNTS**

**12.** Great Lakes, through its Bio-Lab subsidiary, is one of the world's largest manufacturers of water treatment products for swimming pools and

spas, cooling towers, fountains, and other water systems. These products are sold to residential and commercial pool and spa owners through a Bio-Lab dealer network, mass retailers, and pool and spa professionals through Bio-Lab distributors worldwide.

**13.**    Great Lakes, through its Bio-Lab subsidiary, owns and operates a large facility at 1739 Dogwood Dr , Conyers, Georgia, at which pool and spa chemicals are processed, packaged and stored  Some of the chemicals which Bio-Lab uses, processes, and stores at this facility are trichloroisocyanuric acid, dichloroisocyanuric acid, and calcium hypochlorite, all of which are highly toxic, highly volatile, ultra-hazardous materials

**14.**    At approximately 4:30 a.m on May 25, 2004, a fire broke out at Building No. 14 of Bio-Lab's warehouse complex in Conyers, (hereinafter referred to as "The Fire")  On information and belief, there were approximately    15    million    pounds    of    calcium    hypochlorite, trichloroisoeyanuric acid, dichloroisocyanuric acid, along with numerous other toxic and/or combustible materials in the warehouse at the time  On information and belief, this warehouse contained a water sprinkler system, purporting to comply with minimum fire code requirements, that was totally inadequate and inappropriate to deal with a fire involving the substantial quantity of ultra-hazardous materials stored at the facility

**15.** On information and belief, calcium hypochlorite, trichloroisoeyanuric acid, and dichloroisocyanuric acid have a well known history of hyper-reactivity to contaminants, which may result in a strongly exothermic reaction. When exposed to such contaminants, or when exposed to sufficient heat, calcium hypochlorite, trichloroisoeyanuric acid. and dichloroisocyanuric acid will cause and/or violently accelerate combustion, creating its own oxygen, until the fuel is completely consumed.

**16.** On information and belief, the calcium hypochlorite, trichloroisoeyanuric acid, dichloroisocyanuric acid, other toxic chemicals and combustibles stored in the warehouse burned in an uncontrollable inferno from approximately 4:30 a m , on May 25 through the evening of May 26, 2004. The Fire produced huge cloud of smoke and fumes that contained pyrogenic byproducts created by the decomposition and burning of chemicals and other combustible materials, including chlorine gas, and other highly dangerous, toxic chemicals.

**17.** On information and belief, after The Fire started, the Rockdale County Sheriff and Conyers Police Departments ordered an evacuation of all people within a two-mile radius of The Fire  As a result, thousands, of people were rousted from their homes and businesses and could not return for one or more days

**18.** On information and belief, during the time of The Fire, the prevailing wind carried a plume of toxic smoke and fumes at least forty-five miles from the Bio-Lab warehouse in a general northeasterly direction through Rockdale, Newton, Walton, Morgan, Greene, and Putnam Counties, Georgia, causing damage to persons, property, plants and animals in its path.

**19.** On information and belief, for several months after the time of The Fire, Bio-Lab released from the site of The Fire toxic fumes into the air, as well as toxic fluids into the ground, streams and water table surrounding the warehouse, causing damage to persons, property, plants and animals in their path

**20.** Upon information and belief, Bio-Lab had previously been warned and received notice regarding its improper storage, processing, manufacturing and handling of chemicals at its facility and the possibility that such unsafe practices could result in explosions, fire and harm to the surrounding community  In fact, on April 1, 2004, the local fire department responded to a hazardous materials release which resulted in a fire at Bio-Lab Plant 2.  The chemical fire was caused by the negligent handling and mismanagement of incompatible materials  Likewise, upon information and belief, The Fire that occurred at the Bio-lab facility on May 25, 2004 was caused, in part, by the improper handling and mismanagement of dangerous

chemicals. However, unlike the April 1, 2004 incident, where the fire department was promptly notified, Bio-Lab failed to act appropriately on May 25, 2004 and notify the fire department in a prompt manner. As a direct and proximate result of these failures, The Fire on May 25, 2004 reached catastrophic levels, destroying buildings and forcing an entire community to flee.

21. As a direct result of The Fire and its aftermath, plaintiffs, and the Class they represent, have suffered damages in the past and/or into the foreseeable future, including personal injuries, emotional distress, fear and fright, evacuation and inconvenience, property damage, special damages for past and future loss of income, special damages for business interruption, special damages for out-of-pocket expenses, special damages for past and future cost of medical care and diagnostics, including medical monitoring in the future for latent diseases.

22. On information and belief, at all times pertinent hereto, Bloom, has been an executive vice-president of Great Lakes, in charge of its specialty products division, which includes Bio-Lab. On information and belief, at all times pertinent hereto, Bloom has also been the chief executive officer of Bio-Lab, ultimately responsible for the safe operation and maintenance of all of Bio-Lab's facilities, including the Conyers, Georgia warehouse where

The Fire occurred. On information and belief, Bloom's personal actions and/or inactions were a proximate cause of The Fire and its aftermath, particularly in that he knew of the chemical instability of calcium hypochlorite, trichloroisoeyanuric acid, dichloroisocyanuric acid and their propensity to cause fires, he knew that a standard sprinklered warehouse would not adequately suppress a calcium hypochlorite, trichloroisoeyanuric acid, and dichloroisocyanuric acid fire; that he had duty to see to it that the Conyers warehouse was safe; and that he had a duty to properly train personnel with sufficient fire protection equipment for the chemicals stored there; and that he breached those and other duties

**23.** On information and belief, Great Lakes has exercised such operational and financial control over its wholly owned subsidiary, Bio-Lab, that it is responsible to the same extent as Bio-Lab, as set forth herein. Great Lakes is also responsible for the negligence of its employee, Bloom, under the doctrine of respondeat superior.

**COUNT ONE - NEGLIGENCE**

**24.** Paragraphs 1 through 23 are pled as if set forth in full herein

**25.** Defendants had a duty to conduct their operations in a safe manner and to maintain their premises in a safe condition, so as to prevent and/or suppress fires in their warehouses.

26.    On information and belief, Defendants knew, as early as 2000, that calcium hypochlorite, trichloroisoeyanuric acid, and/or dichloroisocyanuric acid have a well-documented history of hyper-reactivity to contaminants and/or heat, which may result in a strongly exothermic reaction, and that these chemicals will rapidly accelerate combustion, creating their own oxygen, until the fuel is consumed

27.    On information and belief, Defendants knew, as early as 2000, that a standard warehouse sprinkler system, even one that complied with national, state and local fire codes, would not adequately suppress a calcium hypochlorite, trichloroisoeyanuric acid, or dichloroisocyanuric acid accelerated fire.

28.    Defendants breached their duties in the following, non-exclusive respects:

a)    Improperly storing large amounts of calcium hypochlorite, trichloroisoeyanuric acid, dichloroisocyanuric acid, combustibles and other hazardous chemicals, in close proximity,

b)    Failing to properly store calcium hypochlorite, trichloroisoeyanuric acid, dichloroisocyanuric acid, combustibles, and other hazardous chemicals, in a safe manner,

c)    Failing to prevent contamination of the calcium hypochlorite,

trichloroisoeyanuric acid, and/or dichloroisocyanuric acid so as to prevent fire,

d) Failing to keep heat sources away from the calcium hypochlorite, trichloroisoeyanuric acid, and/or dichloroisocyanuric acid so as to prevent fire,

e) Failing to provide adequate fire protection equipment to suppress and/or control a calcium hypochlorite, trichloroisoeyanuric acid, and/or dichloroisocyanuric acid accelerated fire,

f) Failing to properly design and/or maintain their warehouse in such a manner as to adequately protect against fires;

g) Failing to properly inspect their warehouse and its contents to prevent The Fire,

h) Failing to properly train personnel to inspect and/or store the hazardous chemicals that burned in The Fire;

i) Failing to properly supervise personnel to prevent The Fire;

j) Failing to properly train personnel in firefighting techniques;

k) Failing to keep a sufficient number of trained personnel on the job at all times in order to prevent and/or put out The Fire before it got out of control,

l) Failing to conduct and/or properly conduct and/or properly implement a

process hazard analysis of the Conyers facility;

m) Failing to properly process, store, and handle the hazardous chemicals and other combustibles at the Conyers warehouse in order to prevent fires;

n) Failing to promptly notify the fire department and other disaster response agencies of the outbreak of The Fire on May 25, 2004;

o) Any other actions or inactions which may be discovered and proven at trial

**29.** As a proximate result of the foregoing, plaintiffs and the Class have suffered the damages described in Paragraph 21, above

**30.** In the alternative, the damages to plaintiffs would not have normally occurred if Defendants, who were responsible for the ownership, control, manufacture, processing, packaging, use, storage, inspection and/or handling of the hazardous chemicals in the Conyers warehouse, had exercised the high degree of care placed upon them by law in the discharge of these duties, the specific failure of which plaintiffs may not be able to prove, but which was and is within the knowledge of Defendants, and which leads to no other conclusion than that Defendants were at fault. Therefore, plaintiffs plead application of the doctrine of *res ipsa loquitur* as to all Defendants named herein

**31.**     On information and belief, Defendants breached state and/or local laws and/or regulations governing their manufacture, processing, packaging, use, storage, inspection and/or handling of hazardous materials, which were designed to specifically protect against occurrences such as The Fire, and which were specifically designed to protect the Plaintiffs and the Class against the damages they suffered from The Fire. Because these laws and/or regulations impose a fixed duty of care, and because Defendants breached that duty, Defendants are guilty of negligence *per se*.

## COUNT TWO - STRICT LIABILITY

**32.**     Paragraphs 1 through 31 are pled as if set forth in fill herein.

**33.**     Defendants have caused to be brought into the State of Georgia, and/or have created in the State of Georgia, hazardous, toxic substances, including trichloroisocyanuric acid, dichloroisocyanuric acid, and calcium hypochlorite.

**34.**     Defendants had exclusive custody of said toxic substances, and had complete control over the manufacture, processing, packaging, use, storage, inspection and/or handling of these dangerous materials

**35.**     Defendants' activities with respect to the manufacture, processing, packaging, use, storage, inspection and/or handling of said toxic materials constitute "ultrahazardous" or "inherently dangerous" activities similar to

blasting or the use of explosives

36.     On information and belief, Defendants' ultra-hazardous activities in the manufacture, processing, packaging, use, storage, inspection and/or handling of said toxic materials were a direct and proximate cause of The Fire and, as such, Defendants are strictly and absolutely liable to plaintiffs and the Class for all the damages suffered by them, as set forth in Paragraph 21, above.

## COUNT THREE - NUISANCE

37.     Paragraphs 1 through 36 are pled as if set forth in full herein.

38.     The Fire, and the resulting release of toxic chemicals into the air and water, constitute a public and private nuisance in that they impaired the Plaintiffs and the Class in particular, and the public in general, from the enjoyment and free use of their homes and property.

39.     This nuisance was caused by the Defendants' habitual improper manufacture, processing, packaging, use, storage, inspection and/or handling of hazardous materials on their property which has caused toxic releases in the past, which caused The Fire, and which continued to emit toxic chemicals into the air and water, which annoys, inconveniences, endangers, and disturbs the Plaintiffs, the Class, and the public in general, in their health, safety, and comfort of their homes and property.

## COUNT FOUR - TRESPASS

**40.** Paragraphs 1 through 39 are pled as if set forth in full herein.

**41.** On information and belief, Defendants intentionally stored, processed, inspected, and/or handled hazardous materials in such a way that The Fire would inevitably occur, resulting in toxic, hazardous chemicals entering, via air and water, upon land, in the legal ownership and/or possession of the plaintiffs and the Class, thereby making Defendants liable for trespass, without proof of actual harm.

**42.** Alternatively, Defendants recklessly or negligently caused toxic, hazardous chemicals entering, via air and water, upon land, in the legal ownership and/or possession of the plaintiffs and the Class, causing harm to the land, thereby making Defendants liable for trespass

## COUNT FIVE – AVOIDANCE OF RELEASES
## DECLARATORY JUDGMENT

**43.** Paragraphs 1 through 42 are pled as if set forth in full herein.

**44.** In the aftermath of The Fire, Defendants, through their agents, professional claims adjusting companies, embarked on a course of obtaining releases of all claims from members of the Class who either had personal injury claims or property damage claims in excess of $2,500. As of February 10, 2005, Defendants had obtained over 600 such releases,

(hereinafter referred to as "settling Class members").  Plaintiff, Holt, is one of the settling Class members.

**45.**     These signed releases purported to release Defendants from any and all liability for past and future claims arising out of The Fire

**46.**     At the time these releases were obtained, Defendants were well aware of the constituency and potentially long-term harmful effects of the toxic chemicals that were emitted in The Fire    In spite of said knowledge, Defendants did not make the settling Class members aware of constituency and potentially long-term harmful effects of the toxic chemicals that were emitted in The Fire at the time the releases were obtained.

**47.**     At the time these releases were obtained, Defendants were aware that one or more class action lawsuits had been filed on behalf of all person affected by The Fire, which included the settling Class members.  In spite of said knowledge, Defendants did not make the settling Class members aware of the existence of said lawsuits, nor did it advise the settling Class members that the execution of a release of all claims would prevent them from pursuing their claims in the lawsuits.

**48.**     Defendants' failure to disclose the constituency and potentially long-term harmful effects of the toxic chemicals that were emitted in The Fire, and their failure to disclose the effect of the releases on rights to pursue

claims in pending litigation, constitutes an affirmative act of concealment by Defendants when they obtained releases of all claims from the settling Class members. Defendants' concealment was not in good faith, knowing that the rights of settling Class members were being unfairly compromised.

49.     Defendants owed a duty to bargain in good faith with the settling Class members when it solicited, offered, contracted, and settled claims related to The Fire at issue herein   These duties included common law duties and duties defined by statute, code and regulation.   Defendants exercised great influence over settling Class members when it directly solicited claims while they were in a vulnerable mental state.   Defendants recognized that the settling Class members were in a fragile mental state and seized upon this opportunity to offer them money during a time of need, and while they were in a disadvantaged bargaining position.

50.     Because of their vulnerable state and their disadvantaged bargaining position, these settling Class members relied upon Defendants' representations to their detriment and signed releases as a proximate result of the false representations without full knowledge of the consequences.

51.     As a result of Defendants' concealment, none of the settling Class members possessed information sufficient to make a knowing and voluntary release of their claims

**52.**    General releases of "any and all claims", especially of claims for future damages, cannot extend to claims which the releaser does not know or suspect to exist in his favor at the time of executing the release.  Had the settling Class members been fully aware of the consequences of signing their releases, they would not have done so

**53.**    Defendants' bad faith concealment of facts material to the execution of full releases by the settling Class members renders the agreements null and void as a matter of law, and a declaratory judgment should be rendered nullifying the effect of any such release.

## COUNT SIX - PUNITIVE DAMAGES

**54.**    Paragraphs 1 through 53 are pled as if set forth in full herein.

**55.**    On information and belief, in April 2004 Defendants had an unauthorized release of toxic trichloroisocyanuric acid, which was being investigated by the U.S. Environmental Protection Agency (E.P.A.) for violations. On information and belief, Bio-Lab had been cited previously by the E.P A  for similar violations

**56.**    Defendants knew of the hazards attendant to the manufacture, processing, packaging, use, storage, inspection and/or handling of the

.

dangerous chemicals stored at their Conyers warehouse, and knew that exposure to these chemicals and/or their pyrogenic by-products involved a serious risk of personal injury to persons, and damage to property

**57.** In spite of Defendants' knowledge of the fire hazards associated with calcium hypochlorite, dichloroisocyanuric acid, and trichloroisocyanuric acid and, their knowledge of the health and property damage risks involved, and their prior history of unauthorized toxic releases, Plaintiffs are informed and believe that Defendants intentionally, or with wanton and reckless disregard for the public safety, failed to take protective measures in their Conyers warehouse to prevent The Fire from occurring in the first place and/or intentionally, or with wanton and reckless disregard for the public safety, failed to implement safety procedures and/or devices to suppress or control The Fire

**58.** As a result of the foregoing intentional or wanton and reckless conduct by Defendants, The Fire occurred, causing extensive damages to the Plaintiffs and the Class.

**59.** Plaintiffs specifically allege that the manufacture, processing, packaging, use, storage, inspection and/or handling of the dangerous chemicals at Defendants' Conyers warehouse was done in such a way as to evince a reckless disregard for the public safety in general and for the

Plaintiffs and the Class in particular, and Plaintiffs specifically allege that such conduct subjects Defendants to absolute liability and punitive damages.

## COUNT SEVEN - ATTORNEYS FEES

**60.**   Paragraphs 1 through 59 are pled as if set forth in full herein.

**61.**   On information and belief, the foregoing wrongful acts of Defendants were in bad faith, obliging Defendants to pay Plaintiffs' attorneys fees and expenses of this litigation pursuant to Georgia Code §13-6-11

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs pray for the following relief against Defendants:

1.   That, as soon as practicable, the Court certify this action as a class action;

2   That there be a trial by jury on all issues in this case allowed by law;

3.   That the Court declare void and unenforceable any purported settlement and release made between Defendants and any settling Class member;

4.   That there be judgment in favor of the Plaintiffs, and the Class so certified, and against the Defendants Great Lakes, Bio-Lab, and Bloom, jointly and severally, for the full amount of

damages suffered by Plaintiffs and the Class, including compensatory damages in an amount proven by each Plaintiff and member of the Class, and punitive damages for the Plaintiffs and the entire Class in the amount of $450,000,000,

5.    That there be judgment in favor of the Plaintiffs, and the Class so certified, and against the Defendants, Great Lakes, Bio-Lab, and Bloom jointly and severally, for legal interest, court costs, attorneys fees and expenses, as allowed by law; and,

6.    For all other general and equitable relief, including, but not limited to medical monitoring.

Respectfully submitted:
**ORLANDO & KOPELMAN, P.C.**

Richard Kopelman (GA Bar No. 428115)

315 West Ponce de Leon Avenue, Suite 400
Decatur, GA  30030
Telephone:  (404) 373-1800
Facsimile: (404) 373-6999

**CARTER & TATE, P.C.**
Mark A Tate (GA Bar No  698820)
P O. Box 9060
Savannah, GA  31412
Telephone   (912) 234-3030
Facsimile: (912) 234-9700

**OF COUNSEL TO**
**ORLANDO & KOPELMAN, P.C. and**
**CARTER & TATE, P.C. :**

**HENRY DART, ATTORNEYS AT LAW, P.C.**
Henry T. Dart  (LA Bar No  4557)
510 North Jefferson Street
Covington, LA 70433
Telephone: (985) 809-8093
Facsimile. (985) 809-8094

**USRY, WEEKS AND MATTHEWS**
T. Allen Usry (LA Bar No  12988)
1615 Poydras St  Suite 1250
New Orleans, LA 70112
Telephone· (504) 592-4600
Facsimile. (504) 592-4641

**GARRISON SCOTT & GAMBLE, P.C.**
W. Lewis Garrison, Jr  (GA Bar No 286815)
2224 First Avenue North
Birmingham, AL  35203
Telephone· (205) 326-3336
Facsimile: (205) 326-3332

**ZIMMERMAN REED, PLLP**
Barry G  Reed (AZ Bar No  020906)
14646 N. Kierland Blvd., Suite 145
Scottsdale, AZ  85254
Telephone   (480) 348-6400
Facsimile: (480) 348-6415

**BELLOVIN & KARNAS, P.C.**
M  David Karnas, Esq. (AZ Bar No  013728)
100 North Stone Road
Eleventh Floor, Suite 1105
Tucson, Arizona 85701
Telephone  (520) 571-9700
Facsimile: (520) 571-8556

**THE CORTIGENE LAW FIRM**
Seth Cortigene (TX Bar No 04846200)
1200 State Highway 146 South, Suite 190
LaPorte, TX  77571
Telephone: (281) 867-4884
Facsimile. (281) 867-4886